UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

GERARD O'CONNOR,

                          Plaintiff,         **REPORT AND RECOMMENDATION**
                                                  **08 CV 3623 (CBA) (LB)**

           -against-

NEW YORK CITY HOUSING AUTHORITY,
LOIS SHAPIRO, Manager,
JULIUS BRILLER, Hearing Officer,

                          Defendants.

---------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

Plaintiff filed this *pro se* complaint pursuant to 42 U.S.C. §1983 ("§1983") alleging that defendants violated his Fourteenth Amendment due process rights. Defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6), and for an award of attorney's fees. The Honorable Carol B. Amon referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). As defendants refer to matters outside the pleadings in their motion, but have served plaintiff with the requisite notice pursuant to Local Rule 12.1,[1] defendants' motion will be treated as one for summary judgment. See Fed. R. Civ. P. 12(d). For the following reasons, it is respectfully recommended that the defendants' motion for summary judgment should be granted, but defendants' motion for attorney's fees should be denied.

---

[1] Defendant provided plaintiff with the requisite "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" along with a copy of Local Civil Rule 56.2, setting forth plaintiff's obligations in opposing a motion for summary judgment. See Local Civil Rules 12.1, 56.2; document 24.

## BACKGROUND

Plaintiff, Gerard O'Connor, is a former tenant of the New York City Housing Authority's ("NYCHA") Todt Hill Houses in Staten Island, New York. (NYCHA Notice of Apartment to be Vacated ("2007 notice to vacate"), attached to defendants' notice of motion to dismiss the amended complaint ("Defs.' Mot.") as Exhibit P.) NYCHA brought administrative charges against plaintiff in early 2000 for his failure to submit proof of his income to NYCHA; for refusing to sign a new lease; for repeatedly failing to make timely rent payments; and for refusing to allow NYCHA officials to place a fire sticker on his apartment door. (NYCHA Determination of Status for Continued Occupancy, dated June 7, 2000, attached to Defs.' Mot. as Exhibit A; Amended Supplemented/Specification of Charges, attached to Defs.' Mot. as Exhibit C.) NYCHA scheduled an administrative hearing regarding these charges for May 12, 2000. (Decision & Disposition of Hearing Officer Julius Briller, dated May 12, 2000, attached to Defs.' Mot. as Exhibit A.) Plaintiff failed to appear for the hearing or to request an adjournment, the charges were sustained on default, and the NYCHA Administrative judge recommended that plaintiff's tenancy be terminated. (Id.) On June 7, 2000, NYCHA's board adopted the recommendation and terminated plaintiff's tenancy. (Id.)

In November 2000, plaintiff filed an application with NYCHA to vacate the June 7, 2000 default judgment. (Letter dated April 17, 2001, from Elyse Hilton ("Hilton letter"), attached to plaintiff's opposition to the defendants' motion to dismiss ("Pl.'s Opp'n") as Exhibit 9.) While plaintiff's application to vacate the NYCHA default judgment was pending, he also filed an Article 78 proceeding in the New York Supreme Court, New York County, to challenge the June 7, 2000 administrative decision. (Id.) On December 19, 2000, NYCHA moved to dismiss plaintiff's Article 78 petition, arguing that it was time barred. (Id.; Order Denying Art. 78

Petition (Apr. 20, 2001) ("April 2001 decision"), attached to Defs.' Mot. as Exhibit B.) However, on January 3, 2001, NYCHA's hearing officer granted plaintiff's application to vacate his default, (Hilton letter), and therefore the New York Supreme Court denied plaintiff's Article 78 petition as moot. (April 2001 decision.)

A new hearing was held on June 12, 2002 before defendant Hearing Officer Julius Briller. (Transcript of June 12, 2002 hearing ("Transcript"), attached to the Amended Complaint as Exhibit 2.) Plaintiff appeared at the hearing to ask for an adjournment to allow his lawyer to appear on his behalf. (Id.) Plaintiff also argued that the grievances that he filed against NYCHA alleging, among other things, a rent overcharge and a failure to provide proper security, were defenses to the charges against him and that NYCHA should address his grievances before he answers their charges. (Id.) Defendant Briller granted plaintiff's request for an adjournment and agreed to hear plaintiff's claim that he was overcharged rent simultaneously with the administrative charges against him when the proceeding resumed. (Id.)

NYCHA rescheduled plaintiff's hearing for August 29, 2003. (Letter from Thaddeus Kwasnik, of NYCHA's Law Department, to plaintiff, dated August 1, 2003, attached to Defs.' Mot. as Exhibit C.) Plaintiff again failed to appear for his hearing, and on September 10, 2003, the Hearing Officer sustained the new charges on default and recommended termination of plaintiff's tenancy. (NYCHA Decision & Disposition of Hearing Officer Julius Briller, dated October 1, 2003, attached to Defs.' Mot. as Exhibit D.) On October 1, 2003, NYCHA adopted the recommendation and terminated plaintiff's tenancy for a second time, effective December 31, 2003. (Id.; NYCHA Determination of Status for Continued Occupancy, dated October 1, 2003, attached to plaintiff's amended complaint ("Am. Compl.") as Exhibit 8; NYCHA Notice to Vacate, dated November 25, 2003, attached to Am. Compl. as Exhibit 8.)

On December 3, 2003, plaintiff, through his attorney, requested that the Hearing Officer vacate the default against him, arguing that his failure to appear on August 29, 2003 was due to a death in his family. (Letter from Jeffrey Johnson, plaintiff's attorney, dated December 3, 2003, attached to Am. Compl. as Exhibit 3.) NYCHA opposed plaintiff's request, stating that despite plaintiff's attorney's assertion to the contrary, no one contacted the hearing court or NYCHA prior to the August 29, 2003 hearing to inform them that plaintiff could not attend, or to request an adjournment. (Affirmation in Opposition, attached to Defs.' Mot. as Exhibit G.) The request to vacate was denied on February 27, 2004. (Letter of NYCHA Hearing Officer Julius Briller dated February 27, 2004, attached to Defs.' Mot. as Exhibit G.)

While the second application to vacate the default was pending, plaintiff filed an Article 78 petition in the New York Supreme Court. (Verified Petition dated December 29, 2003, attached to Defs.' Mot. as Exhibit F.) On July 6, 2004, the New York Supreme Court denied the petition as premature because at the time the petition was filed (December 24, 2003), the administrative court had not yet denied the motion to vacate the default judgment. (Order dated July 6, 2004) denying the Article 78 Petition ("July 2004 decision"), attached to Defs.' Mot. as Exhibit H.) By the time the Court decided the Article 78 petition on July 6, 2004, it was too late for plaintiff to file a new Article 78 Petition challenging the administrative court's February 27, 2004 denial of plaintiff's motion to vacate the default.

Instead, plaintiff moved to renew his Article 78 petition, arguing that his counsel negligently failed to advise him to timely appeal the final administrative decision. (Plaintiff's Notice of Motion to Renew, New York Supreme Court, New York County, dated July 16, 2004, attached to Defs.' Mot. as Exhibit I.) Plaintiff's motion was denied on February 10, 2005 as "no new facts [had] been adduced which would render the previous Article 78 application anything

4

other than premature, as the court has previously held." (Order Denying Motion to Renew dated February 10, 2005, attached to Defs.' Mot. as Exhibit K.)

Plaintiff then sought new counsel and filed an order to show cause seeking to vacate the Court's July 6, 2004 and February 10, 2005 decisions and to grant a rehearing on the matter. (Affirmation in Support, New York Supreme Court, New York County, dated March 22, 2005, attached to Defs.' Mot. as Exhibit M.) The parties stipulated to mark the order to show cause off the court's calendar so the two sides could discuss settlement. (Stipulation Marking Motion off the Court's Calendar, dated May 19, 2005, attached to Defs.' Mot. as Exhibit N.) Plaintiff's counsel tendered an offer, but settlement was not reached.

NYCHA commenced holdover proceedings in New York City Housing Court in November 2006, to enforce the termination of plaintiff's tenancy. (Decision/Order, Civil Court of the City of New York, County of Kings, Housing Part ("Housing Court Order"), dated November 22, 2006, attached to Defs.' Mot. as Exhibit O.) On November 22, 2006, the Housing Court granted NYCHA possession of plaintiff's apartment and issued a warrant of eviction. (Id.; 2007 Notice to vacate.) Plaintiff and his wife vacated the apartment on January 2, 2007. Plaintiff appealed the November 22, 2006 Housing Court judgment to the Appellate Term, but the lower-court decision was affirmed on January 3, 2008. (Judgment from the New York Supreme Court, Appellate Term, dated January 3, 2008, attached to Defs.' Mot. as Exhibit Q.)

Plaintiff filed his original complaint in the instant action on August 28, 2008; he amended the complaint on March 16, 2009. Plaintiff's amended complaint sets forth allegations that defendants denied him due process, focusing primarily on the June 12, 2002 hearing, the entry of default for failing to appear on August 29, 2003, and the subsequent denial of plaintiff's motion

to vacate the default. (See Am. Compl. generally.) Defendants now move to dismiss the amended complaint and for attorney's fees. Plaintiff opposes the motion.

## DISCUSSION

### I. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248 ); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. The Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Matsushita, 475

U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotations omitted).

## II. STATUTE OF LIMITATIONS

Defendants argue that plaintiff's amended complaint should be dismissed as time-barred. Because §1983 does not provide its own statute of limitations, the Court looks to the law of the forum state to determine the limitations period. Wilson v. Garcia, 471 U.S. 261, 271. In New York, §1983 claims must be brought within three years of accrual. Owens v. Okure, 488 U.S. 235, 240-241 (1989); Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001). Although the law of the forum state determines the applicable statute of limitations under §1983, federal law determines when a federal claim accrues. See Wallace v. Kato, 549 U.S. 384, 387 (2007) ("[T]he accrual date of a §1983 cause of action is a question of federal law that is not resolved by reference to state law"). A claim accrues when plaintiff has "a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." Id. at 388 (internal quotes omitted). Generally, a §1983 action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Jefferson v. Kelly, No. 06 CV 6616, 2008 U.S. Dist.

LEXIS 32954 (E.D.N.Y. Apr. 21, 2008) (quoting Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002)). As plaintiff filed his complaint on August 28, 2008, any claim that accrued before August 28, 2005 should be dismissed as time-barred.

It is not entirely clear from the amended complaint which proceeding plaintiff claims violated his due process rights, though he appears to focus on (1) his June 12, 2002 hearing, (Am. Compl. ¶¶ 21-27, Exhibit 2), and (2) the default stemming from his failure to appear on August 29, 2003. (Am. Compl. ¶¶ 28-33, Exhibits 3- 6, 8). However, even if plaintiff claims that *all* of the proceedings violated his due process rights, all of the proceedings concluded before August 28, 2005.[2] Therefore, defendants' motion should be granted; plaintiff's claims are time-barred and should be dismissed.

### III. THE ROOKER-FELDMAN DOCTRINE

Defendants also argue that the Court lacks subject matter jurisdiction over plaintiff's action, pursuant to the Rooker-Feldman Doctrine. The Rooker-Feldman doctrine holds that lower federal courts do not have "appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme] Court." McKithen v. Brown, 481 F.3d 89, 96 (2d Cir. 2007) (citing Rooker v. Fidelity Trust Company, 263 U.S. 413, 416 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). This Circuit has set forth four requirements for the application of Rooker-Feldman following the Supreme Court's decision in

---

[2] Plaintiff's amended complaint alleges that the "illegal eviction has caused lasting injury . . . ," (Am. Compl. ¶34), and that "NYCHA had until midnight, December 31, 2006 to rescind eviction," (Am. Compl. ¶ 13). The final holdover proceeding terminating plaintiff's tenancy was held on November 22, 2006—within the statute of limitations period—wherein the housing court issued the warrant of eviction but stayed its execution through December 31, 2006. Although plaintiff does not specifically mention this proceeding in his amended complaint, to the extent that plaintiff alleges that defendants failed to "rescind eviction" between November 22, 2006 and December 31, 2006, this claim would not be barred by the statute of limitations. Nevertheless, plaintiff fails to state a claim here, as he does not demonstrate how defendants' decision to enforce the warrant of eviction, issued by housing court, violates his constitutional rights.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005): "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." McKithen, 481 F.3d at 97 (citing Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotes omitted)). However, Rooker-Feldman does not apply to actions regarding the decisions of a state *administrative agency*. Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U.S. 635, 644, n. 3 (2002); Mitchell v. Fishbein, 377 F.3d 157, 165 (2d Cir. 2004)("This principle holds true even where the administrative agency acted in an adjudicative capacity.").

Defendants argue that plaintiff's alleged injuries result from, among other things, the Article 78 decisions in state court. However, the true "source of the injury," Hoblock, 422 F.3d at 87, is not the Article 78 proceedings at all, but rather the NYCHA administrative hearing from which they arose. See Sindone v. Kelly, 439 F. Supp. 2d 268, 274 (S.D.N.Y. 2006) (distinguishing for purposes of Rooker-Feldman between an administrative decision and an Article 78 order as the possible cause of plaintiff's injuries); see also Hoblock, 422 F.3d at 88 ("The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by Rooker-Feldman, of the state-court judgment.").

Plaintiff's first Article 78 petition was denied as moot, as the administrative court had since vacated the default that plaintiff was challenging through his petition. Similarly, plaintiff's second Article 78 petition was denied as premature twice, because the administrative court had not been given the opportunity to vacate plaintiff's default at the time the petition was filed.

Both decisions had the effect of returning the matter to the administrative level for further proceedings. Any decision regarding plaintiff's tenancy was therefore strictly under the purview of the administrative court. Because Rooker-Feldman does not apply to administrative decisions, the Court does not lack subject-matter jurisdiction regarding plaintiff's claims about the administrative proceedings.[3]

Nevertheless, plaintiff alleges that "said illegal eviction has caused lasting injury domestically and financially." (Amend. Compl. ¶34). The eviction proceeding itself was conducted at the Civil Court of the City of New York, County of Kings: Housing Par Y. Again, plaintiff does not explicitly refer to this proceeding in his amended complaint. However, to the extent that plaintiff alleges injuries resulting from this decision (such as his removal from the residence), and invites review of that decision here, the Court is barred from hearing these claims under Rooker-Feldman, and they should be dismissed. See McKithen, 481 F.3d at 97 ("[A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.").

IV.  RES JUDICATA

Defendants further argue that plaintiff's claims are barred by the doctrine of *res judicata* because plaintiff already "litigated the issue of his tenancy up to the Appellate Term," and brought an earlier action against NYCHA for due process violations in the Southern District of New York.

---

[3] Plaintiff's complaint alleges injuries following the administrative proceedings that occurred before his eviction, such as "[r]ighting the violative eviction required heavy borrowing. Debtentures are still carried." (Amend. Compl. ¶35.)

10

Under *res judicata*, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 277 (E.D.N.Y. 2009)(quoting Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999)). "New York employs a 'transactional approach' to *res judicata*; thus once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." Yoon v. Fordham Univ. Faculty & Admin. Ret. Plan, 263 F.3d 196, 200 (2d Cir. 2001)(internal quotes omitted). When deciding whether two actions originated from the same transaction or claim, "we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Marvel Characters v. Simon, 310 F.3d 280, 287 (2d Cir. 2002)(citations omitted).

However, "*res judicata* does not bar subsequent litigation when the court in the prior action could not have awarded the relief requested in the new action." Id. As defendants point out, plaintiff litigated the issue of his tenancy all the way to the Appellate Term. However, that appeal was from the housing court judgment granting NYCHA possession of the residence and issuing a warrant of eviction. (Housing Court Order, attached to Defs.' Mot. as Exhibit O.) The housing court did not have jurisdiction to award money damages as sought herein. Wentworth v. Hedson, 06-CV-3373, 2008 U.S. Dist. LEXIS 17895 *4 n.3 (E.D.N.Y. Mar. 7, 2008). Likewise, plaintiff could not seek damages in the administrative and Article 78 proceedings.

Nevertheless, *res judicata* bars plaintiff's claims, as he previously brought the same allegations against NYCHA in 2006 in the Southern District. Plaintiff filed his complaint in that

court on December 13, 2006, just three weeks after Housing Court granted NYCHA possession of his residence, and less than a month before he vacated the apartment. (O'Connor v. New York City Housing Authority, et al., 06-cv-14397 (KMW) attached to Defs.' Mot. as Exhibit U.) The Court dismissed the complaint *sua sponte* stating: "Plaintiff [ ] fails to allege facts sufficient to demonstrate that defendants deprived him of his apartment or his rent without due process of law." (Id.) Plaintiff's identical claim in the Southern District was dismissed. Though plaintiff's complaint in that case may have included some different claims than the instant action,[4] the complaints clearly involved the same "series of transactions," namely the various administrative and court proceedings that led to plaintiff's eviction. Plaintiff either raised, or could have raised, the same claims there. Accordingly, defendants' motion should be granted and the instant complaint should be dismissed.

## V. MONELL LIABILITY

In order to hold a municipal entity liable under §1983, a plaintiff must prove three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)(citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978). Even in the absence of an official policy, such liability may be shown where a custom or practice becomes so "pervasive and widespread that the municipality had either actual or constructive knowledge of it," or where the municipality's failure to properly train or supervise its employees rises to the level of deliberate indifference. Wahhab v. City of New York, 386 F. Supp. 2d 277 (S.D.N.Y. 2005)(collecting cases).

---

[4] Regrettably, defendants were not able to obtain a copy of plaintiff's complaint.

12

Plaintiff fails to allege a custom, policy or practice by NYCHA that deprived him of his rights, therefore defendants' motion should be granted.

## VI. INDIVIDUAL DEFENDANTS

### a. Julius Briller

Plaintiff claims that defendant Briller denied him due process by (1) refusing to order NYCHA to address plaintiff's complaints against the agency before the agency's charges were brought against plaintiff; and (2) refusing to vacate the default notice against plaintiff for his failure to appear at the hearing on August 29, 2003. (Transcript, 14-20.) Defendants, however, argue that defendant Miller is *absolutely* immune from liability for plaintiff's claims. (Defendants' Memorandum of Law in Support of their Motion to Dismiss the Amended Complaint ("Def's Memo"), 17.)

The doctrine of quasi-judicial immunity extends the protection of absolute judicial immunity to "certain others who perform functions closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); see also Butz v. Economou, 438 U.S. 478, 513 (1978)("There can be little doubt that the role of the modern federal hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge.") Absolute immunity hinges not on "rank or title or location within the Government, but from the nature of the responsibilities of the individual official. Cleavinger, 474 U.S. at 201 (quotes omitted). The Court considers the following factors when deciding whether absolute immunity applies:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Id. at 202.

Many courts have extended absolute immunity to state administrative hearing officers who have served a similar adjudicative role as defendant Briller. See e.g., B.D.S. v. Southold Union Free Sch. Dist., No. CV-08-1319, 2009 U.S. Dist. LEXIS 55981 at *56 (E.D.N.Y. June 24, 2009) (extending absolute immunity to state department of education hearing officer); DeMerchant v. Springfield Sch. Dist. & Dan Jerman, No. 1:05-CV-316, 2007 U.S. Dist. LEXIS 9637 at *10 (D. Vt. Feb. 8, 2007)(same); Gyadu v. Workers' Compensation Comm'n, 930 F. Supp. 738, 748 (D. Conn. 1996) (Workers Compensation Commissioner absolutely immune to rulings concerning Plaintiff's entitlement to benefits).

Plaintiff's complaint demonstrates that the proceedings before defendant Briller were adversarial in nature, and that plaintiff was either represented by an attorney, or granted an adjournment to appear with an attorney. (See compl. generally.) Furthermore, the proceedings provide for a multi-level review process, and are governed by rules of procedure allowing parties, among other things, to present witness testimony and documentary evidence before an impartial hearing officer. See Blatch v. Hernandez, 360 F. Supp. 2d 595, 603 (S.D.N.Y. 2005)(detailing NYCHA's procedures for administrative tenancy terminations). These administrative proceedings are also appealable to state supreme court through Article 78 petitions, which plaintiff availed himself of in 2003. The nature of these proceedings make it clear that defendant Briller acted in a quasi-judicial capacity; he is therefore entitled to absolute immunity.

Even if defendant Briller was not entitled to absolute immunity, plaintiff fails to state how defendant Briller's acts violated his due process rights, except to allege in wholly conclusory fashion that defendant Briller is somehow biased. (Am. Compl. ¶28.) Defendants'

14

motion should therefore be granted and plaintiff's claims against defendant Briller should be dismissed.

### b. Defendant Lois Shapiro

Plaintiff's claims against defendant Shapiro also fail because plaintiff does not demonstrate that Ms. Shapiro violated his constitutional rights. It is plaintiff's burden to allege the personal involvement of each defendant in the constitutional violation. Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006). Plaintiff alleges that defendant Shapiro, the former Manager at the Todt Hill Houses where plaintiff resided, inquired about the progress of the proceedings against plaintiff, which had been delayed for over eighteen months. (Amend. Compl. ¶¶ 21-22.) Plaintiff claims that she was the "instigator and perpetrator" of events, and that the "NYCHA Law Department knows that her charges are corrupted." (Id. ¶21.) However, plaintiff fails to allege how Ms. Shapiro's inquiry caused a deprivation of his due process rights. Therefore, defendants' motion should be granted and claims against her should be dismissed.

## VII. ATTORNEY'S FEES

Defendants seek an award of attorney's fees pursuant to 42 U.S.C. §1988. "A court should award defendants attorney's fees under section 1988 only if the plaintiff's claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so." Rounseville v. Zahl, 13 F.3d 625, 632 (2d Cir. 1994). Defendants argue that plaintiff acted in bad faith by bringing this action because he filed numerous proceedings prior to bringing this action, and included in his complaint factual allegations that are "at a minimum, misleading, if not outright falsehoods . . ." (Def's Memo at 18.) Specifically, defendants argue that although plaintiff claims in his amended complaint that he requested an adjournment of the

August 29, 2003 administrative hearing through his attorney, in fact, his attorney merely asked another attorney to request an adjournment with NYCHA's attorney, but that attorney failed to make the request. (Id. at 19.) These two positions are not necessarily inconsistent. Plaintiff contacted his attorney to request an adjournment the day that his father-in-law passed away. His attorney apparently failed to do so. Plaintiff continues to challenge the underlying events herein because he maintains that a default under such circumstances is too harsh. Although plaintiff may find the consequences harsh, he must accept that this is over. He has gotten all the process that is due and he is not going to get his apartment back. That being said, the Court should decline to award defendants attorney's fees in the interests of justice. While the Court should give plaintiff the benefit of the doubt here by recommending that defendants' motion for attorney's fees should be denied, the Court warns plaintiff that he cannot continue this litigation. The Court hereby warns plaintiff that he cannot bring any action in this or any other court regarding this matter.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion for summary judgment should be granted, but defendants' motion for attorney's fees should be denied.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

/Signed by Judge Lois Bloom/
LOIS BLOOM
United States Magistrate Judge

Dated: March 24, 2010
Brooklyn, New York